**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000509
28-FEB-2019
08:15 AM**

NO. CAAP-17-0000509

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

GARY KARAGIANES, Petitioner-Appellant,
v.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(S.P.P. NO. 16-1-0007(2); CR. NO. 92-0340(2))

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, and Reifurth and Chan, JJ.)

Petitioner-Appellant Gary George Karagianes appeals
from the Findings of Fact, Conclusions of Law, and Judgment
Denying Petition to Vacate, Set Aside, or Correct Judgment or to
Release Petitioner From Custody, filed on May 22, 2017, in the
Circuit Court of the Second Circuit ("Circuit Court").[1]

On appeal, Karagianes contends that the Circuit Court
erred by denying his April 27, 2016 Petition to Vacate, Set
Aside, or Correct Judgment or to Release Petitioner for Custody
("Fourth Petition"), pursuant to Rule 40 of the Hawai'i Rules of
Penal Procedure ("HRPP"), because (1) it believed Deputy Attorney
General Lisa Itomura's false misrepresentations, (2) it found
that arguments in the Fourth Petition were waived for failing to
raise them in earlier HRPP Rule 40 petitions, (3) it found the
arguments in the Fourth Petition were without a trace of support

---

[1] The Honorable Peter T. Cahill presided.

in the record or by other evidence submitted, (4) the Hawaii Paroling Authority ("HPA") does not have authority to set a minimum term of imprisonment, (5) his due process rights were violated,[2] (6) his Minimum Term Sentencing hearing attorney was ineffective, (7) there was no finding that Itomura committed misconduct by obstructing justice, (8) it ignored clear evidence in his Motion for Leave to Amend Petition that Itomura made false assertions, (9) there were violations under *Coulter v. State*, 116 Hawai'i 181, 172 P.3d 493 (2007), or due process violations, (10) Hawai'i had no precedent of requiring that the HPA state the factors used to determine the level of punishment prior to *Coulter*, and (11) he does not fit Level of Punishment III.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Karagianes's points of error as follows and affirm:

Points of Error 2 and 3. The Circuit Court erred by finding Karagianes's claims were waived for failing to raise them in earlier HRPP Rule 40 petitions. Karagianes could not have challenged the HPA's actions related to a March 30, 2011 Notice and Order of Fixing Minimum Term(s) of Imprisonment in his prior HRPP Rule 40 petitions, the last of which was denied on September 15, 2008. However, the error was harmless because Karagianes failed to state a colorable claim for relief.

Points of Error 1, 7, and 8. Karagianes's claims regarding Itomura relate to the denial of his request for the HPA Minimum Decision Record, pursuant to HRS Chapter 92F, the Uniform Information Practice Act ("UIPA"). The Fourth Petition clearly alleged "Ground Eight: Prosecutorial/attorney misconduct by [D]eputy Attorney General Lisa Itomura," in that she advised the HPA that the HPA Minimum Decision Record was not disclosable and the HPA relied upon her advice to deny his request for a copy of

---

[2]     Karagianes stated that his equal protection rights were violated, but his arguments relate to a due process violation. The court construes this claim as a due process claim because Karagianes makes no cogent argument for a violation of his equal protection rights.

the HPA Minimum Decision Record. The Circuit Court erroneously denied Karagianes's eighth ground for relief after it characterized the claim as "prosecutorial misconduct by the Department of the Prosecuting Attorney for the County of Maui and/or Deputy Prosecuting Attorney Peter A. Hanano." However, the error was harmless because Karagianes's claims relating to Itomura are without merit.

In a letter dated November 21, 2014, from Tommy Johnson of the HPA to the Office of Information Practices ("OIP"), Johnson noted that prior to denying Karagianes's UIPA request, "The HPA consulted with Deputy Attorney General [] Lisa Itomura who provided the guidance and advice regarding this matter." Karagianes claims that Itomura committed misconduct by falsely representing that the HPA Minimum Decision Record was not disclosable. Karagianes cites De La Garza v. State, 129 Hawaiʻi 429, 302 P.3d 697 (2013), to support his claim that failure to disclose the HPA Minimum Decision Record infringed on his right to be heard at his March 22, 2011 minimum term sentencing hearing.

In De La Garza, the Supreme Court held:

> In light of the critical nature of the HPA's determination of the prisoner's minimum term of imprisonment, due process under Article I, section 5 of the Hawaiʻi Constitution requires that the prisoner have timely access to all of the adverse information contained in the HPA file. The HPA must disclose such information "soon enough in advance" that the inmate has a "reasonable opportunity to prepare responses and rebuttal of inaccuracies." Labrum[v. Utah State Bd. of Pardons, 870 P.2d 902, 909 (Utah 1993)].

129 Hawaiʻi at 442, 302 P.3d at 710. De La Garza only requires timely access to all adverse information "soon enough in advance" to provide a "reasonable opportunity to prepare responses and rebuttal of inaccuracies." Id. The HPA Minimum Decision Record consists of the notes made during the minimum term sentencing hearing, however, not prior to the hearing. Thus, this is not information that must be disclosed prior to a minimum term sentencing hearing.

As to the claim that Karagianes was wrongly denied the

3

HPA Minimum Decision Record under HRS Chapter 92F, a challenge of that sort is to be brought, as the OIP noted in its response, by means of a civil suit under HRS section 92F-27. Insofar as this Fourth Petition is concerned, *De La Garza* limits the materials to which Karagianes is entitled to those prepared *in advance* of the hearing to allow for their review and use at the hearing. Since the HPA Minimum Decision Record was not "prepared," to the extent that it was prepared at all, until during or after the hearing, the alleged wrongful denial of that document under HRS Chapter 92F is not properly addressed by a HRPP Rule 40 petition.

Point of Error 4. Karagianes claims that the HPA lacked authority to set his minimum sentence at 30 years because the Circuit Court imposed a mandatory minimum of only 15 years. Contrary to his claim, the HPA set Karagaines's minimum term sentence for parole eligibility purposes, not a minimum sentence. *Keawe v. State*, 79 Hawai'i 281, 289-90, 901 P.2d 481, 489-90 (1995). In *Territory v. Waiamau*, 24 Haw. 247, 249 (Haw. Terr. 1918), the court stated:

> Where a sentence is imposed under the indeterminate sentence laws of this Territory the term of the sentence is the maximum period fixed by the court. After the prisoner has served the minimum term provided by law or imposed by the sentence of the court he may be allowed to go on parole but he is still in the legal custody and control of the prison authorities and is deemed still to be serving out the sentence imposed upon him. *In re Gertz*, 21 Haw. 526[ (Haw. Terr. 1913)]; *Ughbanks v. Armstrong*, 208 U.S. 481[ (1908)]; *Commonwealth v. Kalck*, 239 Pa. 543[ (Pa. 1913)]

Thus, the HPA did not impose a minimum sentence upon Karagianes.

Point of Error 5. Citing *De La Garza* again, Karagianes argues that his right to due process was violated when Johnson denied his request for the HPA Minimum Decision Record. As explained above, HPA was not required to disclose the HPA Minimum Decision Record pursuant to *De La Garza*.

Point of Error 6. In the Fourth Petition, Karagianes claims that counsel representing him during the March 22, 2011 minimum term sentencing hearing was ineffective for refusing to

"petition/write the HPA or rebutt HPA's unconstitutional violations," and "refused, to honor his verbal agreement to represent [Karagianes]." However, Karagianes also admits that his counsel appeared at his minimum term sentencing hearing on March 22, 2011 and presented material favorable to him. Thus, Karagianes's claim that his counsel failed to represent him despite a retainer agreement is without merit.

Karagianes also complains that his counsel failed to write a letter or request another hearing because the HPA committed *Coulter* violations or violated his due process rights by deviating from the HPA Guidelines for Establishing Minimum Terms of Imprisonment ("Guidelines") when determining his level of punishment. Karagianes also claims that his counsel could not rebut incorrect material used by the HPA during the eight days between the hearing on March 22, 2011 and March 30, 2011, when the Notice and Order of Fixing Minimum Term(s) of Imprisonment was issued. As explained below, there were no *Coulter* or due process violations. Therefore, there was no basis for counsel to request another hearing.

There is also nothing in the record to indicate that the HPA considered additional information after the conclusion of the March 22, 2011 minimum term sentencing hearing. Therefore, Karagianes failed to carry his burden to show counsel was ineffective. *Briones v. State*, 74 Haw. 442, 460, 848 P.2d 966, 975 (1993).

Points of Error 9, 10, and 11. Karagianes claims that there were *Coulter* or due process violations, the HPA had no requirement to state the significant factors prior to the Supreme Court's 2007 opinion in *Coulter*, and he does not fit Level of Punishment III.

Failure to specify the level of punishment or the significant criteria upon which the decision was based, as required by the HPA's Guidelines, constitutes an arbitrary and capricious act. *Coulter*, 116 Hawai'i at 185, 172 P.3d at 497. Deviation from the HPA's Guidelines without providing an explanation is also arbitrary and capricious. *Id.*

The HPA did not fail to specify the level of punishment

or the significant criteria in the March 30, 2011 Notice and Order of Fixing Minimum Term(s) of Imprisonment. It stated the Level of Punishment as Level III and identified the significant factors that were relied upon in determining that level as "(1) Nature of Offense; (2) Character and Attitude of Offender With Respect to Criminal Activity or Lifestyle; (3) Efforts Made to Live Pro-Social Life Prior to Commitment to Prison; [and] (4) Involvement of Offender in Instant Offense."

The HPA did not act arbitrarily and capriciously by determining Karagianes's Level of Punishment to be Level III based upon the specified criteria. Karagianes displayed a callous and/or cruel disregard for the safety and welfare of others under the "Nature of Offense" criteria by asking if the victim was ready to die and then shooting him in the back of the head. Based on Karagianes's character, attitude, and/or criminal history, the HPA could have reasonably concluded that future criminal activity remained probable, thereby satisfying the "Character and Attitude of Offender With Respect to Criminal Activity or Lifestyle" criteria. Also based upon Karagianes's involvement with drugs and alcohol prior to commitment to prison, the HPA could conclude Karagianes was unlikely to respond positively to a program of parole supervision and lead a pro-social life upon release when the HPA cited "Efforts Made to Live Pro-Social Life Prior to Commitment to Prison" as a criteria. The "Involvement of Offender in Instant Offense" criteria was satisfied because Karagianes was solely responsible for or was the instigator in the commission of Murder in the Second Degree. Therefore, the HPA did not act arbitrarily and capriciously by setting Karagianes's Level of Punishment at Level III. The HPA did not deviate from the Guidelines by setting his minimum term at 30 years because the range for a minimum term for a defendant sentenced to Life with Parole at Level of Punishment III is 20 to 50 years.

Therefore, the Circuit Court correctly found that there was no basis to hold an evidentiary hearing, and the Findings of Fact, Conclusions of Law, and Judgment Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner

From Custody, filed on May 22, 2017, in the Circuit Court of the Second Circuit is affirmed.

DATED:  Honolulu, Hawai'i, February 28, 2019.

On the briefs:

Gary Karagianes,
Pro Se Petitioner-Appellant.

Diane K. Taira and
Lisa M. Itomura,
Deputy Attorneys General,
for Respondent-Appellee.

Presiding Judge

Associate Judge

Associate Judge